IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

FILED

MAR - 5 2009

WILLIAM B. GUTHRIE
Clerk, U.S. District Court

By_____
Deputy Clerk

JEMAINE M. CANNON, )
)
Plaintiff, )
)
v. ) No. CIV 08-130-RAW-SPS
)
SGT. WRIGHT, )
)
Defendant. )

## OPINION AND ORDER

This action is before the court on the defendant's motion to dismiss or for summary judgment. The court has before it for consideration plaintiff's complaint [Docket #1], the defendant's motion [Docket #28], plaintiff's response [Docket #33], the defendant's reply [Docket #35], and a special report prepared by the Oklahoma Department of Corrections (DOC) at the direction of the court [Docket #29], in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).

Plaintiff, an inmate in the custody of DOC who is incarcerated at Oklahoma State Penitentiary (OSP) in McAlester, Oklahoma, brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at OSP. The defendant is Delina Wright, OSP Correctional Security Officer.[1]

---

[1] To the extent the defendant is sued in her official capacity as a DOC official, plaintiff's claims are barred by the Eleventh Amendment. It is well settled that a damages suit against a state official in his official capacity is merely another way of pleading an action against the State. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). *See also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1988) (state officials sued in their official capacities are not "persons" for purposes of a § 1983 suit, because the suit is against the official's office and not against the official).

Plaintiff alleges he suffers from numerous chronic diseases for which he has been prescribed 12 medications. He also claims he has severe, life-threatening food allergies that require a special diet. He contends Defendant Wright violated his constitutional rights by denying him access to a working toilet and medical care.

Plaintiff asserts that between 8:00 a.m. and 9:00 a.m. on March 14, 2008, the toilet in his cell became stopped up and quit working. When he informed Defendant Wright that he needed to use a plunger, she replied, "If I can find one." At lunchtime plaintiff again asked Wright about getting a plunger, and she said it had been used two nights earlier, and she could not find it. Wright then gave plaintiff a sack lunch and stated, "I know it doesn't have your name on it, but it's yours." The sack contained bread and breaded chicken nuggets, which are not allowed on plaintiff's special medical diet. Plaintiff showed Wright a copy of his medical dietary order, and Wright impatiently grabbed another sack lunch and angrily gave it to plaintiff, saying, "Try this." Because the second sack lunch contained bread and cookies, it also conflicted with plaintiff's dietary order.

When plaintiff told Defendant Wright that the second lunch was incorrect, Wright allegedly asked in a hostile manner, "What do they usually give you in a sack lunch?" Plaintiff said he usually received fruit, peanut butter, graham crackers, etc. He claims Wright then left "fuming with negative attitude towards plaintiff."

That evening plaintiff made additional unsuccessful requests for a plunger or to get the toilet fixed. Although a working toilet allegedly was available, he was not allowed to use it. Plaintiff asserts that he then "had a pressing need to use a working toilet, as he was full from eating and now was experiencing abdominal pain."

On the morning of March 15, 2008, plaintiff told Defendant Wright that the toilet had

not been fixed. Wright said that if feces were not floating in it, the problem not a priority, and she then left. Later that morning plaintiff asked to use a plunger or a snake, or to be allowed access to a working toilet. Plaintiff also stated that if his requests were not met, he wanted the doctor to be advised. He explained that his medical problems required him to excrete waste from his gastrointestinal system on a multi-daily basis. No call was made to medical services, and plaintiff's request to speak to the lieutenant was not granted.

Plaintiff claims he no longer could eat or drink, because he had no access to a working toilet. In addition, he could not take his medications, because they are administered with food. When plaintiff explained the situation to Defendant Wright, she allegedly replied with a profanity and walked away. Plaintiff asserts that by March 18, 2008, he was dehydrated and suffering from abdominal and chest pain, muscle cramps, and organ failure, because of his lack of food, liquids, and medication. Defendant Wright, however, allegedly refused to call for medical services, as requested by plaintiff. Plaintiff contends that when the toilet finally was repaired, he had gastrointestinal bleeding from March 19 through March 26, 2008, as a result of denial of a working toilet and lack of medications.

Defendant Delina Wright states by affidavit in the special report that she did not serve lunch on March 14, 2008 [Docket #29-5]. At approximately 11:20 a.m. on March 14, 2008, plaintiff notified her that his toilet was not working properly. She wrote a Maintenance Work Request [Docket #29-4 at 2] and notified Maintenance of the order. An affidavit by the OSP Maintenance Superintendent states he fixed the slow flushing problem at 1:00 p.m. that afternoon by clearing the blockage [Docket #29-7 at 2]. Defendant Wright further states in her affidavit that plaintiff never asked to see the lieutenant or medical services, and he did not ask to use a snake or plunger from March 15-17, 2008. On March 18, 2008, plaintiff

complained about his toilet, and while he was at the law library, Wright entered his cell and flushed it. It was working without any problems, so when plaintiff returned, she asked him why he had lied about it. Plaintiff told her that it must have fixed itself.

Defendant Wright has filed a motion to dismiss or for summary judgment, alleging plaintiff has failed to exhaust his administrative remedies for any of the claims in his complaint. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted).

In deciding a motion to dismiss based on nonexhaustion, the court can consider the administrative materials submitted by the parties. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in part on other grounds, Jones v. Bock*, 549 U.S. 199 (2007). Proper exhaustion under the PLRA contemplates full compliance with all agency deadlines, including the deadlines enumerated in a prison's grievance procedures. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . .").

According to DOC Policy OP-090124, "Inmate/Offender Grievance Process," an inmate first must attempt to resolve his complaint informally. If communication with staff

4

is unsuccessful, he may submit a Request to Staff within seven calendar days of the incident. If the complaint still is not resolved, he then may file a grievance to the reviewing authority or facility correctional health services administrator, whichever is appropriate, within 15 calendar days of the incident or of the date of the response to the Request to Staff, whichever is later. The reviewing authority may extend the submission period up to 60 days for good cause. The inmate may appeal the grievance response to the administrative review authority or chief medical officer, whichever is appropriate, within 15 calendar days of receipt of the grievance response or any amended response. The administrative process is exhausted only after all of these steps have been taken.

Affidavits in the special report indicate plaintiff filed no Requests to Staff, grievances, or medical grievances for the time period involved in this lawsuit. He did file a Request for Medical Services on March 18, 2008, complaining of dehydration, muscle cramps, abdominal pain, chest pain, and organ failure, but he did not mention these complaints in his March 18, 2008, doctor's visit [Docket #29-10]. Plaintiff contends the affidavits in the special report are false, but none of plaintiff's exhibits to his response to the defendant's motion support his claim. Exhibit 1 to his response [Docket #33 at 13] is an April 1, 2008, letter to plaintiff from Dennis Cotner, Medical Services Administrator, about an improper grievance appeal that was dated February 27, 2008, before the incidents in this lawsuit occurred. Plaintiff's other exhibits to his response include multiple improperly submitted grievances and a 12-month grievance restriction from Mr. Cotner. Only one of the documents appears to provide any evidence that plaintiff filed any grievance appeals, but the issue in that appeal is unrelated to the claims in this action [Docket #33 at 41]. The court, therefore, finds plaintiff has failed to exhaust his administrative claims for the issues alleged

5

in his compliant.

**ACCORDINGLY,** the defendant's motion to dismiss [Docket #28] is GRANTED, and this action is, in all respects, DISMISSED for failure to exhaust administrative remedies, pursuant to 42 U.S.C. § 1997e(a).

**IT IS SO ORDERED** this 5th day of March 2009.

*/s/ Ronald A. White*
**RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**